Case 16-5630, Kurt Smith v. Joseph Meko. Argument not to exceed 15 minutes per side. Mr. Arnold, you may proceed. Thank you. May it please the Court, Counsel, I'd like to reserve three minutes for rebuttal, please. Your Honor, I'd like to begin by discussing the first issue in the case, which is whether the petition in this action was timely. And in discussing that, I think it's important to understand the context of Kentucky sentencing law, because I think it helps explain why any inmate in Mr. Smith's position would have acted exactly as he did. In Kentucky, in general, with one exception that turns out to be very relevant to this case, parole eligibility is not apportioned by sentence. It is not calculated piecemeal. Rather, Kentucky calculates parole eligibility by looking at the total sentence to serve and then applying a percentage to that sentence. And so when an individual who is serving one sentence receives a second sentence that is to run concurrently to the first and is shorter than the first, parole eligibility will never change except in this one individual circumstance. And so the circumstance, of course, is the circumstance that's at issue here, which is an offense committed in the institution or on escape. And that is a function of a particular regulation. But I think it's important to be clear that that regulation is an unusual circumstance, generally. And so my client's understanding from being in the prison would have been that concurrent sentencing meant no change to his parole eligibility. He asked his attorney whether there would be a change to his parole eligibility and was told that there would not be. He then returned to the Department of Corrections, and they recalculated his sentence because of the new offenses and did not change his parole eligibility originally on his timesheet, according to him. So in his case, as of three months after the sentence, it looked to him like he had gotten exactly what he had bargained for, that the parole eligibility hadn't changed. So is that timesheet in the record? It is not. It is referenced by him as part of his letter to the Department of Corrections when he is challenging. He says, my timesheet says this, and his timesheet is referring to the resident record card that he would have received after he returned. But it is undisputed that the first time he was informed that the parole eligibility had changed was in his reclassification. And he found out about it almost by accident, really. It was simply listed as part of the reclassification form. They list the parole eligibility in the top corner. And so his parole eligibility had changed by exactly two years. So at the time he got that, he did not know whether that was simply a typo, somebody had typed a three instead of a one, whether that was somebody making a mistake in the Department of Corrections and presuming his sentences to be consecutive when in fact they were concurrent, whether that was a function of a decision by the Department of Corrections to change their interpretation of a rule, such in a way that he wouldn't have been able to anticipate at the time of his sentencing, or whether that was simply the law working out as it was always going to work out. Only the fourth of those states a federal claim. That's the question. He had to get to that point where he had sufficient facts to know that he had a federal claim against his attorney. At that moment he really didn't. So he then did, I think, what a diligent inmate would do and wrote a letter promptly to the Department of Corrections. And the letter clearly indicates, I got concurrent sentencing. You have run my sentences consecutively. That's not right. Please correct it. He received a letter from Amy Roberts, and in the Amy Roberts letter, first, two things that are important to understand about that letter. One, that letter does not bind the Department of Corrections in any way. Under Kentucky law, the Department of Corrections cannot litigate any claim against the Department of Corrections on the basis of that letter. But secondly, it's incorrect. The letter, the operating portion of the regulation, the one that has caused this change to his parole eligibility, the regulation reaches a point where it says, the parole eligibility shall be changed by adding the following. One, the original sentence, and then two, his sentence on escape. That didn't apply to him. And then three, a sentence committed in the institution. She had omitted part three so that it only looked like the only thing they were adding was the original sentence, and the original sentence was already correctly calculated. So it would have appeared to him as though they were misinterpreting something. And so he very promptly filed his final appeal to the Department of Corrections and received, for the first time, a letter from Ashley Sullivan, the Ashley Sullivan letter. And the Ashley Sullivan letter describes to him, gives him the entirety of the regulation that applies to him, and says, as a result of this, this is why the sentence is calculated that way. That's the first time he's told that. And there is no disagreement that if that letter is the anchor date, this petition is timely. And there's no disagreement if the October 11, 2011, letter is the operative date that the statute is barred? That's correct. All right. I mean, you say he didn't know, but doesn't the statute, the EPPA statute, doesn't require knowledge. It requires that the factual predicate of the claim could have been discovered through the exercise of due diligence. It does, Your Honor. It's an objective standard of what could have been discovered. And why could he not have discovered his alleged claim of ineffective assistance of counsel as of October 11, 2011? Your Honor, I think that there are two responses to that. First, I think that he was trying to discover that claim. That's what the process was there for. As I said, the issue is whether or not he understood he had a federal claim against his attorney. At the moment he was dealing with this, I don't think that it is simply unclear to anybody, based in part upon the history of the case, but also upon the incomplete information that he was given. Don't you think an issue of his attorney's alleged ineffective assistance as to the eligibility date was at least raised by that October 11 decision, the latter? Would a reasonable person be unnoticed that may be his attorney, I mean, for the claim that it was incorrect? I think he would. I suppose certainly a person could look at that and think that among the possibilities are that my lawyer gave me incorrect advice. Isn't that all it takes? Could have discovered? Could have by the exercise of due diligence. Not would have, but could have. Your Honor, I would disagree with the interpretation that's given in the facts of this case because, again, first, if we look at, for example, the Johnson decision, that particular individual had all of the information they needed to discover the claim that they had that their previous conviction was invalid. That was all known to them well before they litigated the invalid conviction. The court still found that the decision itself was a fact, and that fact then could be used to sort of restart the clock for that individual. And I think that that analysis can be applied to this situation as well because this is an instance where the actual determination of his parole eligibility is an essential fact of the claim. In the absence of sort of a conclusive determination of his parole eligibility changing, he does not necessarily have a claim against his attorney, and in particular, he doesn't have a claim against his attorney if his parole eligibility changed for reasons that the attorney wouldn't have been responsible for. In the original brief, we cited a case, Pate v. Commonwealth, the facts of that case, if you saw it, would be sort of indicative of a situation where the individual, everybody in the courtroom believed that his parole eligibility for this Class A felony was 20 percent. He gets to corrections, it's 20 percent. Corrections changes its interpretation, and suddenly it's 85 percent. And his claim was not against his attorney. His attorney didn't misadvise him. Everybody agreed that 20 percent was what they thought the law was. His claim was against the Department of Corrections. And so he doesn't have any real ability to differentiate what lane he's taking until the Department of Corrections nails down what it is doing, and it did not do that until the Ashley Sullivan letter. If I can turn to the substantive issue, the circumstances of this case are that the state court opinion rejected my client's Strickland claim based upon their interpretation of the record in this case. And the record is that when my client appeared and pled guilty, he was asked, this plea is a concurrent sentence, but it may cause problems for you. It may make you PFO eligible. It may affect parole eligibility. Do you know how this will affect you? And my client responded, yes. And the Kentucky court interpreted that as resolving the question of whether he was aware of the impact on parole eligibility, but that is not factually, I think, a fair or reasonable interpretation of that set of circumstances. In Blackledge v. Allison, the U.S. Supreme Court found that, you know, in a situation where you were comparing, you know, facts in a post-conviction action to facts to the circumstances of a plea colloquy, that the plea colloquy is not necessarily conclusive as to facts, where the allegation doesn't necessarily refute the facts of the plea colloquy. And in Blackledge, I believe the issue was that he claimed that there was a secret deal. He said under oath of the plea, I am agreeing to 17 years, but then his post-conviction action was, I was told to say that, but really the deal was 10 years and I didn't get the 10-year deal. And so he was contradicting the plea colloquy completely. And the court found that that was appropriate to, that he was still entitled to proceed on that claim. In this particular case, my client wasn't, you know, I don't think that his current statements contradict his former statements. His former statement was simply, are you, you know, do you think you are aware, basically it was asked, do you think you're aware of everything? He said he thought he was. He did think he was. What he said, what he's saying today is that he has learned since that time that he was unaware of the impact that this would have on his parole eligibility. And that, you know, on the basis of that, that his claim should be allowed to proceed. So, you know, we believe that that. Are you still trying to figure out why he didn't know that in October? Again, the issue, you know, so why he didn't know that his parole eligibility had changed or why he didn't know that his attorney had given him incorrect advice? Well, if he knew that his parole eligibility had changed, he surely had reason to be concerned that his counsel had given him incorrect advice. Yes, we agree. However, I think that, again, the issue is sort of what is, you know, what were the circumstances under which the parole eligibility had changed and whether those circumstances were circumstances of which counsel should have been aware or not. And in this particular case, there was no resolution to that question until the Ashley Sullivan letter. Because, again, the letter that he received from Ms. Roberts, the second letter, was incomplete. It would not have, you know, it would have led a reasonable person to look at that letter and believe that the mistake was with the Department of Corrections. Because if you simply read the portion that she quotes, that's what the natural interpretation is, is that you've, Department of Corrections have gotten this wrong. And so that's why it would make sense to proceed to the next level and ask the next person, that and the fact that it is required for exhaustion purposes. Thank you very much, Your Honor. Thank you. Counsel. Your Honor, my name is John Paul Vero for the Warden. May it please the Court. I'd like to focus initially on the timeliness issue. The AEDPA gives petitioners a one-year statute of limitations in which to challenge state judgments in federal court. That one year begins to run from the latest of certain dates, and in this case we're arguing under Subsection D1D of 2244. The one year begins to run the date on which the factual predicate of the claim could have been discovered through due diligence. As Judge Griffith mentioned, it's an objective, not a subjective standard. You look to when a duly diligent person in the petitioner's circumstances could have discovered the factual predicate for his plea. Here, the district court found the date of October 18, 2011. In my brief, I've kind of gone with that. It's actually arguable that he was on notice of his claim much earlier than that, although, however, if you look at the plea colloquy date during the plea colloquy, he said that his claim is that his attorney misadvised him on parole eligibility and that his attorney told him that if he pled guilty to these concurrent sentences, his parole eligibility date would not change. Yet during the colloquy, the judge told him it's a concurrent sentence, but it could affect a number of things. It may affect parole eligibility. Arguably, he was on notice at that point that his attorney had misadvised him. Even giving him the benefit of the doubt, though, if you take the October 18 date, clearly he either knew or any reasonable person would have known the factual predicate for his claim by that time. On September 26, 2011, he received the reclassification form from Corrections. It had the changed parole eligibility date. He received that. He wrote a letter to Corrections in which he said, I've received this form. You have my date wrong, and I've also seen that you have my date wrong on the computer. So he's aware of at least two sources where the date has been changed. In response to that, he received the letter from Amy Roberts on October 11. That letter said, no, we don't have your date wrong. Your date is correct. Here's the applicable regulation as to why it is. It quoted the regulation nearly in its entirety. It provided an explanation of the regulation in layman's terms, and it had a detailed calculation of how Corrections had arrived at the new date. That's the letter that included, in other words, if you have not yet met the parole board and you receive additional sentences for crimes committed within the institution, the parole date will be adjusted with each time that you receive an additional charge while incarcerated. It doesn't matter if they're concurrent or not. That's correct, Your Honor. That was the letter on October 11, 2011. A week from that time, by October 18, 2011, he had signed a copy of that letter, and he'd filed a second kind of appeal letter to Corrections. We believe that by that date at the latest, as the district court found, he either knew or could have known the basis of his claim. Again, his claim is, my attorney misadvised me about parole eligibility. Did he raise that misadvice claim in the Kentucky State Court? In his pro se post-conviction 1142. Is that evidence of his knowing? Wasn't that in October also? When he filed his pro se 1142? 1142? I'm sorry, 1142 is a state post-conviction action in which he raises ineffective assistance of counsel claims. As I recollect, he said, I think this was where he said that his counsel for the incidents that happened within the prison provided constitutionally deficient, ineffective assistance of counsel by failing to recognize that the sole inducement for his plea bargain in this case was unattainable, which strikes me as being something of a strange way of stating it, but nonetheless a claim that his parole eligibility date has been affected. Yes, that claim was kind of construed to be the current claim, which is my attorney misadvised me about parole eligibility. Basically, my attorney told me if I accept this plea for concurrent sentencing, my eligibility date will not change. That claim was filed in his post-conviction motion, his pro se post-conviction motion, which was roughly a year after he received this letter. I'm sorry. Okay, so that was in October, but it was a different October. 2012. Yes, Your Honor. Thank you for straightening me out on that. Sure, sure. The district court and the warden believes that he either knew or could have known the basis of his claim by the date he received that first letter, if not much earlier. He was clearly on notice that his attorney may have misadvised him. He knew what his attorney allegedly had told him. He knew that his date had been changed contrary to that advice, and he knew or could have known the reason why, based on the regulation that he had been instructed on. He's emphasized in his briefs that he truly believed that they got it wrong, that a concurrent sentence wouldn't change it, but that's irrelevant. It's an objective standard, and he was clearly on notice, or a reasonable inmate was on notice of the basis of his claim. I've cited the Ninth Circuit case of Hassan where it says, you discover the factual predicate for an ineffective assistance of counsel claim when you were on notice of facts suggesting deficient performance and prejudice. It's the same thing I mentioned earlier. He knew what his attorney had told him. He knew that that date had changed contrary to that advice, and he knew or could have known that that advice was incorrect based on the regulation. And it's only necessary for purposes of figuring timeliness that it's not, let me rephrase that, it's not necessary that he know the legal effect of what he thinks was the bad advice. That's correct. Just that he thinks it's bad advice, and now he has this effect, and the two are connected. Yes. Must have discovered, or with the exercise of due diligence, could have discovered facts suggesting both unreasonable performance and prejudice. I think that's clearly satisfied by the October 18, 2011 date, if not before. If you use that date as the date on which his limitations period starts to run, it would have expired by October 18, 2012. His post-conviction collateral attack was not filed within that year, so there's no statutory tolling involved, and his petition would be untimely. The appellant has argued various grounds for why we should use the November date. The warden believes they're unavailing. This is not an administrative exhaustion case. He's not challenging the correction's ultimate decision regarding his parole eligibility. It's an ineffective assistance of counsel claim. The magistrate judge recognized that distinction. The district judge recognized that distinction. There's no Kentucky law that required him to exhaust his administrative remedies in order to raise an ineffective assistance of counsel claim. Well, Kentucky law couldn't trump federal law anyway, could it? No. I mean, we're dealing with the EPTA statute. That's correct. But what if we concluded that we weren't satisfied that it was really untimely? And address the merits, Your Honor? Yes. It's interesting. Counsel has left the first hurdle on the merits. He completely failed to address it, that there is no clearly established federal law as decided by the Supreme Court here. We're dealing with an issue of misadvice on parole eligibility. The United States Supreme Court, which is what we have to go by in the habeas review context, has never squarely addressed that an attorney can be constitutionally deficient for giving misadvice on parole eligibility. The first case to look at in the Strickland sets a general performance standard, reasonable professional assistance. After that, if you look at Hill v. Lockhart, the same issue was presented before the court. The petitioner's attorney there had given him allegedly improper parole eligibility advice, and that was the issue before the court. The court kind of dodged the issue about whether incorrect advice on parole eligibility could amount to deficient performance under Strickland. It said it's unnecessary to decide that. We can decide this case on prejudice. If you then go to the more recent case, Padilla v. Kentucky, that case involved advice on deportation consequences. Kentucky, in that case, made a direct versus collateral consequences argument. They said you shouldn't find deficient performance here, even though the attorney may have given him incorrect deportation advice, because deportation advice is a collateral consequence. Deportation is a collateral consequence of a plea that doesn't traditionally fall within the scope of the Sixth Amendment right to counsel. The Supreme Court did acknowledge they rejected that argument and said, no, under Strickland, you have to correctly advise about deportation consequences of a guilty plea. In rejecting that, they said we've never drawn a distinction between the direct and collateral consequences of a plea in defining the scope of counsel. But the very next line of the opinion is whether that distinction needs to be made and it is an issue we don't have to reach today because of the unique nature of deportation. Based on that, it's still an open question whether collateral consequences, such as advice on parole eligibility here, even fall within Strickland's scope of reasonable professional assistance. Post-Padilla, in the case of Chaidez v. United States, they even recognized that in Padilla they didn't eschew the direct collateral line across the board. It's still an open question, and since it's still an open question, it can't amount to clearly established federal law as decided by the U.S. Supreme Court. So did the Kentucky court squarely address that issue of collateral? They did not. They did not. They decided it based on the colloquy exchange. They decided on no prejudice? They did not address prejudice. They based their decision on the exchange she had between the trial court and the plea colloquy. Smith has emphasized throughout his pleadings that the only thing that mattered to him in this case was his parole eligibility date. That's the only thing that mattered. Since he's serving a life sentence, the only thing that's important to him is keeping that parole eligibility date. His current claim now is, my attorney told me that if I pled guilty to these concurrent sentences, that my date wouldn't change. But during the colloquy, the trial judge directly informed him. He said, you know it's a concurrent sentence, but it does add problems to you. It may affect a number of things. It may affect persistent felon eligibility. It may affect parole eligibility. And then he said, do you understand everything it can affect you with? And Smith said, yes, I do. If the Kentucky state courts had ruled on the collateral issue, that there is no ineffective assistance claim for collateral matters, such as improper advice as to parole eligibility, that ruling would be entitled to EPA deference. But here, without a ruling, do we have any deference to the Kentucky court on that issue? Well, I need to correct myself a little bit. Kentucky, as counsel may point out, has extended Strickland to cover advice on collateral consequences such as parole eligibility. There's a case, Commonwealth v. Pridham. But that's state law, right? Yes. We're talking about federal law now. And a state court's determination as to what the federal law of Strickland is, I think is entitled to deference, unless it's contrary to clearly established law established by the Supreme Court, right? But if we don't have a ruling, how do we give them deference? Well, the Kentucky Supreme Court decision of Pridham is actually contrary to our position. They interpreted Padilla, in that case, to extend beyond merely deportation. As a matter of federal law or as a matter of state law? As a matter of federal law. That it could include, in that case, it specifically involved parole eligibility on Kentucky's violent offender statute. That case was not relied on by the Court of Appeals in deciding this issue. They focused on the interchange at the colloquy and said, we don't appreciate his claim that counsel could be deficient because he's acknowledged that he understood that his parole eligibility date may change. The Pridham case, I don't believe, is important in this situation at all. We're looking at clearly established federal law as decided by the United States Supreme Court. We don't look at state court decisions to determine that. We don't look at lower federal court decisions to determine that. We look at the U.S. Supreme Court decisions. It's still an open question based on Padilla, based on Scheides, whether advice on parole eligibility even falls within Strickland's scope of required professional assistance. Because of that, as the District Court found, the Kentucky Court of Appeals couldn't have unreasonably applied federal law because there is no duty to advise on parole eligibility. Briefly addressing the prejudice argument, the District Court said, even if you assume that he could overcome the deferential standard and show counsel was deficient, he can't establish prejudice. The warden agrees with that. He got a beneficial sentence. It was less than the maximum he faced. It was run concurrently, which means he effectively got zero additional days of prison for his riot and assault convictions. The appellant says that doesn't matter because he has a life sentence, but he's not just accepted that life sentence. He's actively trying to have it overturned. If he succeeds in having that sentence vacated, he's done. The riot and assault convictions are served out, and he has no more time to serve on that since they were concurrent. If they're consecutive, those sentences would not begin to run until that time. Based on any or all of these arguments, we believe that he's not entitled to relief. His petition was untimely. There's no clearly established law. There was no unreasonable application of Strickland, and he can't establish prejudice. We'd ask that you affirm the District Court's decision. Thank you, counsel. Thank you. I'm going to address a little more about the Strickland issue. Our position is that Strickland has never been held not to apply to any particular situation. I'm sorry. I didn't hear you. Strickland has never been held not to apply to an issue of counsel's advice and the adequacy of counsel's advice. Is that really the test? Don't we have to look to see whether the Supreme Court has made it pretty clear that we are not at liberty to extend what they have held? They have, but they have said repeatedly that Strickland ordinarily applies to claims of counsel's advice on a guilty plea. That's Wright v. Van Patten, Laflin v. Cooper, and other cases. They have declared a general rule that Strickland applies. Our court is routinely reversed by the Supreme Court by unanimous per curiam opinions in lieu of granting certiorari whenever a panel of our court extends a Supreme Court case. In fact, we were just reversed Monday by the Supreme Court. But you say that we can do that? Yes. You are not extending Strickland? Well, the Supreme Court says we really need a case on point to say that it's clearly established by a decision of the Supreme Court, and if they don't have one, we get reversed. I mean, that's the way it's been working. We have a list of opinions within the reply brief where Strickland was applied to circumstances that are certainly well beyond what Strickland was. If that was the case, Strickland would be limited to applications of failure to investigate a mitigation offense in a capital case because that's what Strickland is. I mean, you would concede that the Supreme Court has not definitively held that ineffective assistance of counsel applies to guilty plea collateral proceedings such as parole eligibility. Honestly, Your Honor, I wouldn't concede that parole is a collateral proceeding because parole is the point of sentence. Okay, whatever. But in terms of your question, yes, I would concede that there has not been a case where the issue was parole eligibility. Okay. Now tell me why we don't need a case because that's my interpretation that we need a case now. My interpretation would be that Strickland having been held to apply to all guilty plea contexts, that this is nothing more than advice on a guilty plea, and the circumstances of that advice, whether it relates to parole, whether it relates to something else, should be measured in accordance with Strickland's general test. And Strickland's general test is simply whether it fell below prevailing professional norms and whether there was prejudice. And those tests are all well established in the law. So our view would be that Strickland should be applied. And I would add, I agree with Your Honor's point from earlier, I feel like it is a little bit peculiar because what the argument is, is that we should, instead of deferring to the state court's attempt to apply Strickland, which they did, they thought Strickland was applicable, we should instead rely on circuit precedent to reject the state court's application of this law. And so I feel like that is really incompatible with what the ADPA provides. Thank you very much. Thank you, counsel. The case will be submitted.